## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No.  CR 1:23-00086-002 MLG |
| | § | |
| JEFFREY L. HAM, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, Defendant, Jeffrey Ham, by and through his attorney of record, Assistant Federal Defender, Devon M. Fooks, and hereby submits this sentencing memorandum in favor of a sentence of probation.

### INTRODUCTION

A New Mexico Federal grand jury, indicted Mr. Ham on one count of conspiracy to commit wire fraud pursuant to 18 U.S.C. § 1349 and 14 counts of money laundering pursuant to 18 U.S.C. § 1956(a)(1)(B)(i). [Doc. 2]  The charges stem from Mr. Ham's work for WildEarth Guardians through his company, Timberline Environmental, LLC and James Matison who was the Restoration Program Director for WildEarth Guardians.  On July 17, 2023 and pursuant to Fed. R. Crim. P. 11(c)(1)(B) Mr. Ham entered into a plea agreement with the government wherein he pled guilty to count 1 of the indictment.

18 U.S.C. § 3553(a) states that the court, "shall impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection.  18 U.S.C. § 3553(a)(1)."  A sentencing court is required to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed (a)

to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the

public from further crimes of the defendant; and (d) to provide the defendant with needed

education or vocational training, medical care, or other correctional treatment in the most effective

manner and, the kinds of sentences available and the applicable guideline range. 18 U.S.C. §§

3553(a)(2)(A)-(D).

In *United States v. Booker,* 543 U.S. 220 (2005), the United States Supreme Court held that 18

U.S.C. § 3553(a) requires a court to impose a sentence sufficient, but not greater than necessary to

comply with the four purposes of sentencing set forth in § 3553(a)(2): retribution, deterrence,

incapacitation, and rehabilitation.  This provision is not just another "factor" to be considered along

with the other factors set forth in § 3553(a); this "parsimony clause" sets an independent limit on the

sentence a court may impose.  The Supreme Court reiterated in *Kimbrough v. United States,* 552 U.S. 85

(2007) that the District Court's job is "appropriately [to] frame[] its final determination in line with

§ 3553(a)'s overarching instruction 'impose a sentence sufficient, but not greater than necessary' to

accomplish the sentencing goals advanced in § 3553(a)(2)."  *Id.* at 101.  In the present matter a

sentence of probation is appropriate and is sufficient but not greater that necessary to meet the ends

set forth in 18 U.S.C. § 3553.

### Nature and Circumstances of the Crime

Mr. Matison approached Mr. Ham with a scheme to generate money for Mr. Matison by

generating invoices from his company, Timberline, and submitting them to WildEarth Guardians for

payment for hours of work in excess of the work actually performed.  The fraud lasted for several

years.  While Mr. Ham was initially a voluntary participant his reasons for entering into the

agreement were not selfish.  Mr. Matison told Mr. Ham that Matison's wife was ill and that he was

unable to keep up with the medical payments.  Ham found it difficult to deny a person who was in

such dire financial straits and made the ill-advised decision to try to help Matison and his family. Ham's role was simply to provide the original invoices to WildEarth Guardians then Matison would inflate the amounts in the invoices and issue a check to Ham for the fraudulent amount then Matison would write a check from Timberline to Matison's company, Euro-American Development equal to the fraudulent amount that was added on to the original, non-fraudulent invoice.  Mr. Ham never made a penny off of the scheme.  The money all went to Matison.  Over time it became clear to Mr. Ham that Matison was not using the money for his wife but rather to line Matison's own pockets.  In March of 2019, Mr. Ham had had enough and reported the fraudulent activity to a friend of his named Van Clothier.  Clothier is the owner of another environmental business called Stream Dynamics that Mr. Ham also did work for on occasion.  Clothier reported the fraudulent activity to his attorney who then notified Attorney Peter Schoenberg who was the treasurer for WildEarth Guardians.  WildEarth Guardians hired McHard Accounting Consulting LLC to investigate the matter and McHard determined that the fraud had in fact taken place. John Horning , the Executive Director of WildEarth Guardians notified the EPA Office of Regional Counsel and DOI Office of Solicitor of the fraudulent activity. The complaints were forwarded to EPA's Office of Inspector General (OIG) and DOI OIG for investigation.

Mr. Ham cooperated fully with the McHard investigation as well as with the investigation conducted by the Office of the Solicitor.  Mr. Ham continued to cooperate with law enforcement after his case was indicted.  Despite having given numerous statements previously, he sat down with the prosecution for yet another interview/debrief.

## History and Characteristics of the Defendant

Mr. Ham's life story is relatively unremarkable.  His upbringing was notable only due to the fact that his parents divorced when he was 10.  Mr. Ham lived with his father after the divorce, but

his mother was also very involved in his upbringing and developed a strong relationship with her. Mr. Ham also developed a very strong relationship with his father as well. The divorce of his parents did take a toll on Mr. Ham's mental health.  When he was 16, he attempted suicide by taking pills. Mr. Ham eventually paid his way through college.  It took longer than it does for some but obtaining his degree was of paramount importance to him regardless of how long it took.

He has had some suicidal thoughts and has been suffering from depression related to the present charges but is seeking appropriate assistance to help him cope with the ideations. Unfortunately, Mr. Ham has, in the not-so-distant past, also turned to alcohol to deal with his depression as well.  His issues with alcohol have intruded into his life on more than one occasion resulting in two convictions for driving while intoxicated.  Mr. Ham also has two arrests for possession of marijuana that ended up in dismissals and an arrest for domestic violence which also ended up with a dismissal.

While Mr. Ham struggled with alcohol, he never lost his passion for environmental causes and devoted his career to trying to make the world a better place.  Mr. Ham is a kind man with a gentle soul.  He found himself in this situation not because he was greedy or selfish but because he thought that what he was doing would help a man who he thought was a friend and who was in a difficult spot.

Appellate and district courts have found that such cooperation is grounds for departure. See, e.g., *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (where defendant convicted of filing false income tax return,  and guidelines 10-16 months, district court properly imposed sentence of probation in part because defendant "cooperated with authorities and accepted responsibility…to an extraordinary degree."); *United States v. Milne*, 384 F.Supp.2d 1309 (E.D.Wis.2005)(in bank fraud case, advisory guidelines range of adjustment for acceptance and offense level of 18-24 months did

not fully account for defendant's voluntary reporting of his misconduct to bank and his significant early efforts to repay bank).

One of the goals of sentencing is rehabilitation, see, e.g., *United States v. Grayson,* 438 U.S. 41, 45-48 (1978); *Williams v. New York,* 337 U.S. 241, 247-48 (1949), and a defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence," *Smith v. Wainwright,* 664 F.2d 1194, 1196 (11th Cir.1981). Admission of guilt thus may properly be taken into account in determining what sentence is needed to achieve rehabilitation. See *Brady v. United States,* 397 U.S. 742, (1970).  In *Brady*, the Supreme Court stated, "we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary." Id. at 753.

The guilt that Mr. Ham felt over his actions led him to what one could consider "super" acceptance of responsibility. In his meetings with law enforcement and with private investigators Mr. Ham provided detailed accounts of the operation of the fraudulent scheme.  Mr. Ham never once tried to minimize his actions.  In all of his meetings to provide assistance he was completely open and walked investigators through every part of the scheme often times reviewing bank records and other documents to help investigators understand exactly how the scheme worked, what his role in it was and what Matison's role was.  Mr. Ham's support of the prosecution's efforts with regard to Matison makes him worthy of a downward variance and a probationary sentence.

*Need for the Sentence Imposed to Protect the Public/Serve as a Deterrent*

The guilt that Mr. Ham has experienced related to his criminal actions has haunted him since the day it began. It is hard to imagine how a prison sentence of any length can compete with the burden of having this charge hang over his head for so long when it comes to assessing what amount of time is necessary to achieve the deterrent effect contemplated by 18 U.S.C. § 3553.

There is nothing which says that a sentence of imprisonment is necessarily the only way to protect the public, to afford adequate deterrent or serve as just punishment. Both appellate and district courts have found that probationary sentences can act as effective deterrents. In *United States v. Autery,* 555 F.3d 864 (9th Cir. 2009), the Ninth Circuit found that where defendant convicted of possession of pornography and where the guideline range was 41-51 months the district court's sua sponte variance to probation was not unreasonable in part because in light of the district court's 'stern warning' of maximum sentence to follow any violation it was "improbable that the district court's stern warning will be an ineffective deterrent in this case."

In *United States v. Edwards*, 595 F.3d 1004 (9th Cir. 2010), the Ninth Circuit Court of Appeals stated that, "It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." *United States v. Edwards*, 595 F.3d 1004, 1016 n. 9 (9th Cir. 2010) *quoting* Senate Report No. 98-225 on the Comprehensive Crime Control Act of 1983) (emphasis added); *Gall v. United* States, 552 U.S. 38 (2007) (a sentence of probation is "a substantial restriction of freedom.") In *Gall v. United States,* the Supreme Court held that, although "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms…[O]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall* at 48. The *Gall* Court went

on to state that there were additional restrictions placed on probationers that function as significant restrictions on defendants,

> [P]robationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.

*Id.* A probationary sentence for Mr. Ham will likely include many of the same restrictions as mentioned in *Gall.* Indeed, the Court has great leeway in fashioning a sentence that protects the public as well as deterring additional criminal conduct on behalf of Mr. Ham.

## CONCLUSION

A probationary sentence is sufficient but not greater than necessary to meet the ends set forth in 18 U.S.C. § 3553. Mr. Ham has tremendous remorse over his actions. He is an avid lover of environmental causes and has devoted much of his adult life to protecting the environment. The amount of shame and embarrassment he suffers as a result of using those same environmental causes to enrich a greedy individual cannot be understated.

Mr. Ham did not receive much of a benefit from the fraudulent scheme. Out of the roughly $242,000.00 taken as part of the scheme, Mr. Ham received approximately $5,000.00. This comes out to roughly 2% of the total amount. He did not take part in the scheme because of greed. He did so because he thought he was helping a friend in dire need of money. When Mr. Ham realized that this was not the case, he disclosed his own wrongdoing to a close friend which set the wheels in motion for several investigations and the present indictment.

Mr. Ham participated fully with all of the investigations that arose from his criminal acts. He spoke with both private investigators and law enforcement at length to help them understand the nature of the overall scheme as well as the respective roles of he and Matison. In short, he did everything he could to right the wrongs that he caused. He has never minimized his role in the fraudulent scheme and continues to take responsibility for his actions.

A probationary sentence is warranted in this matter in light of Mr. Hams "super" acceptance of responsibility as well as his efforts to aid in the prosecution of Matison. A probationary sentence will serve as an adequate deterrence against future crimes on behalf of Mr. Ham and protect the public from additional crimes on behalf of Mr. Ham. The requested sentence is also appropriate given the nature and circumstances of the crime as well as the history and characteristics of Mr. Ham.

WHEREFORE, Mr. Ham respectfully requests that this Court sentence him to a probationary sentence, the length of which to be determined by the Court as the Court deems appropriate.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
devon_fooks@fd.org

*/s/  filed electronically December 13, 2023*
DEVON M. FOOKS, AFPD
Attorney for Mr. Jeffrey Ham